OPINION OF THE COURT
George B. Ceresia, Jr., J.
Petitioners are owners and operators of residential health *445 care facilities licensed by the Commissioner of Health of the State of New York and are voluntary, nonprofit corporations.[1] Additionally, petitioners Amsterdam Memorial Hospital, Aurelia Osborne Fox Memorial Hospital, Edward John Noble Hospital, Ellis Center for Long Term Care, Ellis Hospital Skilled Nursing Facility and Ellis Hospital are “hospital-based” facilities.
Respondents are all State officials responsible for the administration of the New York State Medicaid program.
In this CPLR article 78 proceeding petitioners seek a judgment: (1) declaring the Department of Health (DOH) rate revisions to be in violation of the clear language and intent of Public Health Law § 2808 (14); (2) ordering respondent DeBuono to recompute petitioners’ Medicaid reimbursement rates for the period April 1, 1995 through March 31, 1996 through the use of computations which properly reflect the reductions authorized by the Legislature relating to administrative and fiscal expenses; (3) declaring respondents’ implementation of the administrative and fiscal limitations to be in violation of the Federal- Social Security Act for failure to obtain prerequisite approval as required thereby; and (4) declaring respondents’ use of certain rate schedules to be in violation of the rule-making requirements of the State Administrative Procedure Act as well as Public Health Law § 2808.
Public Health Law § 2808 (14) was enacted in June 1995 in an effort to control health care expenditures under the Medicaid program. Specifically, the legislation is designed to limit administrative and fiscal costs (A & F costs) incurred by nursing homes for the period of April 1, 1995 until March 31, 1996. The statute reads as follows: “Notwithstanding any inconsistent provision of law or regulation to the contrary, for purposes of establishing rates of payment by governmental agencies for residential health care facilities for services provided on or after April [1, 1995] through March [31, 1996], the reimbursable base year administrative services and fiscal services costs, as defined in the New York state residential health care facility accounting and reporting manual, of a provider of services, excluding a provider of services reimbursed on an initial budget basis, shall not exceed the statewide average of total reimbursable base year administrative and fiscal *446 services costs of residential health care facilities. For the purposes of this subdivision, reimbursable base year administrative and fiscal services costs shall mean those base year administrative and fiscal services costs remaining after application of all other efficiency standards, including but not limited to, peer group cost ceilings or guidelines. The limitation on reimbursement for provider administrative and general expenses provided by this subdivision shall be expressed as a percentage reduction of the operating cost component of the rate promulgated by the commissioner for each residential health care facility.” (Public Health Law § 2808 [14], as added by L 1995, ch 81, § 61 [emphasis supplied].)
Petitioners maintain that, in implementing the statute, DOH has used a reimbursement rate computation method which affects nearly all the areas of nursing home expenditures, not just administration and fiscal expenses; and that the rate computation method fails to encompass all of the required equalizing adjustments necessary to achieve fair and rational reimbursement. Further, they claim that the change in the computation method does not comply with the requirements of Public Health Law § 2808 (14), 42 USC § 1396a (a) (13) (A)— known as the Boren Amendment of the Federal Social Security Act, and the State Administrative Procedure Act (State Administrative Procedure Act § 202 et seq.).
The State opposes the petition asserting that its computation method is both appropriate and statutorily correct, and that petitioners merely propose an alternate way of calculating the A & F cap which is preferable to them as it lessens the impact of the statute.
Under the Medicaid plan the State has established a daily per patient rate to be applied in determining reimbursement for nursing home services. Medicaid reimbursement rates are calculated according to a complex system set forth in 10 NYCRR 86-2.10. To establish the daily per patient rate of reimbursement, four components of nursing home care are evaluated. They are: (1) direct care, which consists of expenses such as skilled nursing, nursing assistance, pharmaceuticals, activity, social and occupational services. This component comprises approximately 75% of nursing home expenses (10 NYCRR 86-2.10 [c] [1]); (2) indirect costs, which consist of overhead expenses such as plant operations and maintenance, grounds, security, housekeeping, nonphysician and medical education, housing and medical records, laundry, dietary, and fiscal and administration services (10 NYCRR 86-2.10 [d] [1]); *447 (3) noncomparable costs, which includes the cost of services, which DOH considers are not comparable among facilities and must be considered for each individual facility. Such services include physician costs, laboratory services and diagnostic and medical therapy services (10 NYCRR 86-2.10 [f] [2]); and (4) capital costs, which includes depreciation, mortgage expenses, debt service and other real property and equipment related expenses (10 NYCRR 86-2.10 [a] [9]).
Capital costs are evaluated on the basis of current property valuations. The remaining operating components are evaluated using the actual expenses reported in a “base year”, which is currently 1983, and adjusted for inflation (10 NYCRR 86-2.10 [b] [1] [i]). Direct care costs are further adjusted to reflect patient needs, so that a facility which admits heavier care patients receives higher reimbursement to reflect the associated increased cost of care. Indirect costs are adjusted according to “peer groups” based on several factors such as size of facility, affiliation and the degree of care and treatment a facility’s patients require. In this instance, nursing homes affiliated with hospitals have been heretofore analyzed as a separate “peer group” to account for the cost differences inherent in the hospital setting. Both direct care and indirect costs are also adjusted according to cost guidelines including regional wage differences and mean costs for facilities State-wide. The resulting reimbursement rate has been approved by the United States Department of Health and Human Services.
In order to comply with Public Health Law § 2808 (14), DOH, which is charged with the responsibility of setting Medicaid reimbursement rates, amended the established rate computation method to include the calculation of a ratio of administrative and fiscal costs to total operating costs for each facility. An individual facility’s ratio was then compared to an average ratio of these costs for all facilities throughout the State. The State-wide ratio was calculated by DOH to be 9%. In computing the State-wide ratio, hospital based facilities were included with free standing facilities without an adjustment to account for their different circumstances. If a facility’s ratio exceeds the State-wide ratio of 9%, a percentage reduction of Medicaid reimbursement of total operating costs—not just reduction of reimbursement for the administrative and fiscal costs portion—is calculated based on the amount in excess. No adjustment was made for bed conversion and case mix. Needless to say, each petitioner has suffered a percentage reduction in total Medicaid reimbursement due to an individual facility ratio which exceeds the State-wide ratio.
*448 It is well established that an agency’s interpretation of a statute is to be given deference so long as it is not irrational, unreasonable or inconsistent with the statutory purpose (Matter of Memorial Hosp. v Axelrod, 68 NY2d 958; Matter of Medical Malpractice Ins. Assn, v Superintendent of Ins. of State of N. Y., 72 NY2d 753, 761-762). Courts will not usurp the rate-setting responsibility of the Commissioner of Health (Matter of Cabrini Med. Ctr. v Axelrod, 177 AD2d 824, lv denied 79 NY2d 755). “DOH’s rate-setting action may be declared null and void ‘ “upon a compelling showing that the calculations from which [it is] derived [are] unreasonable” ’ (Matter of Society of N. Y. Hosp. v Axelrod, 70 NY2d 467, 473; Matter of Catholic Med. Center v Department of Health, 48 NY2d 967, 968; Matter of Sigety v Ingraham, 29 NY2d 110, 114)” (New York State Assn. of Counties v Axelrod, 78 NY2d 158, 166-167). Reimbursement rates set by the Commissioner must be reasonable and adequate to meet the costs incurred by efficiently and economically operated facilities. In setting rates the Commissioner must consider the elements of cost, geographic differentials in costs, economic factors in the area in which the facility is located, the size of the facility and the need for incentives to improve services and efficiency (Public Health Law § 2807 [3]).
RATIO METHOD
Petitioners claim that calculating a ratio of the base year A & F costs of a facility to the total operating costs of the facility and comparing that ratio to the average State-wide ratio of these costs conflicts with the plain wording of the statute and unfairly penalizes the petitioners. Petitioners also claim that the A & F cap should be applied to reduce the A & F component of the indirect costs, not to reduce the total operating costs component. Although petitioners have demonstrated that there is an alternate way of calculating their deviance from the Statewide average of A & F costs, which way may be beneficial to the petitioners in that it results in a greater reimbursement, they have not shown that the State’s method of computation is in error, is irrational or unreasonable, nor that it conflicts with the statute’s plain language and purpose. In fact the petitioners’ method deviates from Public Health Law § 2808 (14) in that it applies the limitation on A & F costs to that component alone, rather than expressing the cap as a reduction of total operating costs as dictated by the statute.
The ratio method utilized by the State achieves the directive of the statute to set the State-wide average of total reimburs *449 able base year A & F costs, to limit a facility’s reimbursement for A & F costs to no more than that amount, and to express the cap as a percentage reduction of the total operating costs component of the rate.
Furthermore, it cannot be said that the State’s use of the ratio method is so irrational as to be arbitrary and capricious. The fact that the petitioners may not be entitled to as large a reimbursement as if the rate were computed as they proposed does not render the State’s method irrational.
EFFICIENCY STANDARDS
Petitioners claim that the new rate computation method is faulty in that it does not apply all the efficiency standards; more particularly, bed conversion and case mix analyses are omitted from the calculation of total reimbursable operating costs.
The statute is clear that “For the purposes of this subdivision, reimbursable base year administrative and fiscal services costs shall mean those base year administrative and fiscal services costs remaining after application of all other efficiency standards, including but not limited to, peer group cost ceilings or guidelines.” (Public Health Law § 2808 [14].)
The State offers no rational explanation as to why certain efficiency standards are to be applied, e.g., mean direct and indirect cost ceilings, and yet these particular factors excluded. Consequently, the court finds that DOH’s rate-setting computation is arbitrary and capricious insofar as it does not account for changes in the size of a facility (bed conversion factor), nor changes in the number of residents with greater (or lesser) needs (case mix index) of a facility. Historically, these efficiency standards have been used prior to the change in the rate computation method in order to arrive at a final reimbursable operating cost which reasonably reflects a facility’s required expenses. Since the statute does not specifically exclude these efficiency standards and, in fact, includes “all other efficiency standards”, and since Public Health Law § 2807 (3) requires consideration of such factors, it would be arbitrary and capricious to ignore the clear and plain wording of the statute and exclude them from the rate computation method.
According to the notice provided by DOH to each facility which details the rate computation method at issue, regional wage differences were factored into the A & F cap computation.
*450 STATE ADMINISTRATIVE PROCEDURE ACT/STATE HOSPITAL REVIEW AND PLANNING COUNCIL
When the language of a law is specific, all that is required of the agency to effect its mandate is to implement the statute in conformity with its purpose and directive (O’Neil v Metropolitan Tr. Auth., 143 AD2d 739, 740; Matter of Occidental Chem. Corp. v New York State Envtl. Facilities Corp., 113 AD2d 4, 6, lv denied 67 NY2d 604).
Here, the language of the statute is specific. Following that mandate, the State devised a computation method which first computes a State-wide average expressed as the ratio of A & F costs to total operating costs and then computes the amount, if any, of an individual facility’s excess A & F costs based on the amount that the individual facility’s A & F costs exceeds the State-wide percentage. As further required by the statute, the percentage of reduction of A & F costs is “expressed as a percentage reduction of the operating cost component”, i.e., the percentage that the excess A & F costs are to the entire operating costs is computed and this percentage of reduction is then applied to the facility’s entire operating costs. (Public Health Law § 2808 [14].) Revising the reimbursement rate computation method in the manner explicitly called for in the statute did not constitute rule making nor require the promulgation of a regulation pursuant to State Administrative Procedure Act § 202.
Petitioners additionally argue that the statutory scheme of article 28 of the Public Health Law calls for regulations to be promulgated to effectuate the provisions and purposes of the article. Specifically, Public Health Law § 2803 (2) (a) (ii) provides, in part, as follows:
“2. (a) The council [State Hospital Review and Planning Council], by a majority vote of its members, shall adopt and amend rules and regulations, subject to the approval of the commissioner, to effectuate the provisions and purposes of this article, including, but not limited to * * *
“(ii) establishment by the department of schedules of rates, payments, reimbursements, grants and other charges for hospital and health-related services as provided in sections twenty-eight hundred seven, twenty-eight hundred seven-a, twenty-eight hundred seven-c and twenty-eight hundred eight of this article. The schedules established shall be reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities.”
*451 The change in the rate computation method, necessitated by the enactment of Public Health Law § 2808 (14), was not submitted by DOH to the State Hospital Review and Planning Council (SHRPC) for approval prior to its implementation.
Petitioners rely on the finding in Matter of Jewish Home & Infirmary v Commissioner of N. Y. State Dept. of Health (84 NY2d 252). That case is inapplicable as it applied to the promulgation of a new rate computation method, promulgated after the regulation setting forth the existing method had been judicially nullified, and its retroactive application. The issues of notice and retroactive rule making which are the crux of that decision bear no relationship to this case. Likewise, the holding in Matter of Schwartfigure v Hartnett (83 NY2d 296) is distinguished from the facts herein where the percentage of excess A & F expenses varies with each facility according to its particular reported costs and the adjustments relevant thereto. The only fixed percentage applicable to all facilities in this Medicaid reimbursement rate computation method is a Statewide average of reimbursable base year A & F costs, the use of which is mandated by the statute itself (see, Matter of New York City Tr. Auth. v New York State Dept. of Labor, 88 NY2d 225).
The State argues, and the court agrees, that it need not formulate a regulation nor seek SHRPC authorization for a rate change in a case such as this, where the Legislature articulates the computation method in the statute (see, Matter of Home Care Assn. v Bane, Sup Ct, Albany County, May 19, 1994, Spain J., index No. 7151-92, affd 218 AD2d 106, lv denied 87 NY2d 808).
BOREN AMENDMENT
The fact that DOH has not received authorization for the change in the reimbursement rate calculation method from the Federal Health Care Financing Administration (HCFA) as required by 42 USC § 1396a (a) (13) (A) (the Boren Amendment) is irrelevant at this time.[2] The State has sent HCFA its State plan amendment and is awaiting the final determination. Approval is not required before the State is allowed to implement the change in the State plan (Washington State Health Facilities, Assn. v State of Washington, Dept. of Social & Health Servs., 879 F2d 677, 682; Colorado Health Care Assn. v Colo *452 rado Dept. of Social Servs., 842 F2d 1158, 1166; see also, Ward v Thomas, 895 F Supp 406).
Petitioners also assert that DOH was required by the Boren Amendment to conduct an evaluation to determine the effect of the rate change on the level of care Medicaid patients would receive under the new rate. Although the State admits that the A & F. cap was budget-driven, that in and of itself does not mean that the new rate is unreasonable and inadequate to meet the needs of an efficiently and economically operated facility. Further, although an evaluation may provide support for a rate change, DOH is not limited to such an analysis; it may also rely upon the expertise and experience of the agency in making a judgment that the Medicaid reimbursement under the new rate will meet the standard (Matter of Consolation Nursing Home v Commissioner of N. Y. State Dept. of Health, 85 NY2d 326).
Consequently, the State has not proceeded in violation of the Boren Amendment.
All other issues raised in the petition have been considered and found to be without merit.
Accordingly, it is ordered that the petitions are granted to the extent that the Commissioner of the Department of Health is directed to recalculate the reimbursement rate with regard to application of efficiency standards and to reimburse petitioners for any amounts owed them by reason of the recalculation; and it is further ordered that the petitions are hereby dismissed in all other respects.

. Originally, four separate actions were commenced in Oneida County, Herkimer County and Schenectady County. By order of Supreme Court Justice John W. Grow, dated July 22, 1996, these actions were consolidated and transferred to Albany County.

. HCFA is withholding approval of the rate change until DOH demonstrates to HCFA’s satisfaction that the proposed rate meets the reasonable and adequate statutory standard set forth in 42 USC § 1396a (a) (13) (A).