■ In the Matter of AMSTERDAM NURSING HOME CORPORA-TION et al., Respondents, v COMMISSIONER OF THE NEW YORK STATE DEPARTMENT OF HEALTH et al., Appellants. [596 NYS2d 877] —Yesawich Jr., J. Appeal from an amended judgment of the Supreme Court (Hughes, J.), entered June 19, 1992 in Albany County, which granted petitioners' application, in a proceeding pursuant to CPLR article 78, to annul the April 2, 1991 amendment to 10 NYCRR 86-2.10 (a) (3) and to direct the Department of Health to recompute petitioners' Medicaid reimbursement rates.

The amount by which a residential care facility is reimbursed by the State is predicated in part on the number of beds in the facility. For purposes of this appeal, it suffices to note that facilities with greater than 300 beds are reimbursed for indirect costs at a higher rate than those with fewer than 300 beds. Prior to 1990, facility beds were classified as either "skilled nursing facility" (hereinafter SNF) beds or "health related facility" (hereinafter HRF) beds, depending on the level of care provided, and the reimbursement rate for a combination facility—one with both types of beds—was determined separately for each category. Thus, a facility with 160 SNF beds and 160 HRF beds would be reimbursed as though it was in fact two facilities, each with less than 300 beds. This controversy stems from an amendment to Federal law, enacted in 1987, which mandated that beginning October 1, 1990 reimbursement rates must be calculated on the basis of the total number of beds in a facility, without regard to the category (SNF or HRF) into which those beds fell *(see,* 42 USC § 1396a [a] [13] [A]).

To accomplish the change, in August 1990 respondent Commissioner of Health adopted, on an emergency basis, amendments to regulations outlining the State's Medicaid reimbursement methodology. These amendments, which went into effect on October 1, 1990, provided, *inter alia,* for a graduated transition from the old methodology to the new in which the distinction between SNF and HRF beds and facilities was abolished. The amendments were readopted upon their expira-

tion in December 1990 as an interim measure *(see,* former 10 NYCRR 86-2.10, as amended Dec. 27, 1990).

In April 1991, the Commissioner further amended the regulations; the new amendments included a provision declaring that a combined SNF/HRF facility was to be classified as having "over 300 beds" only if it had over 300 beds in the SNF category alone, or in the HRF category alone, as of September 30, 1990 *(see,* 10 NYCRR 86-2.10 [a] [3], as amended Apr. 2, 1991). Along with this extension of the old classification, the April 1991 amendments also eliminated the gradual transition to the new methodology and substituted a delayed implementation. As modified, 10 NYCRR 86-2.10 (s) provided that rates would be calculated in accordance with the old methodology, as in effect on September 30, 1990, until July 1, 1992, at which time the new methodology would be applied in toto *(see,* 10 NYCRR 86-2.10 [s], as amended Apr. 2, 1991).

Petitioners, facilities with greater than 300 beds in the aggregate but with fewer than 300 beds in each category, brought this proceeding seeking, among other things, annulment of the modification of 10 NYCRR 86-2.10 (a) (3) and recalculation of their reimbursement rates from October 1, 1990 to the present. Finding that the challenged amendment impermissibly extended the distinction between the SNF and HRF categories of care indefinitely, in contravention of the Federal mandate, Supreme Court granted the petition, annulled the amendment and ordered respondents to recalculate petitioners' reimbursement rates from October 1, 1990, without reference to the annulled amendment.

On this appeal, respondents take issue with the amended judgment only to the extent that it requires recomputation of rates for the period from October 1, 1990 to June 30, 1992. Inasmuch as the amendment to 10 NYCRR 86-2.10 (s) provided that the methodology established in the nullified amendment was not to take effect until July 1, 1992, respondents' principal contention is that it was improper to order recalculation of rates effective prior to that date. Specifically, they claim that the petition did not challenge the modification to 10 NYCRR 86-2.10 (s), which established the timetable for effectuating the new methodology, but simply the methodology itself, as set forth in 10 NYCRR 86-2.10 (a) (3).

As for respondents' peripheral arguments that this proceeding is untimely brought and that petitioners' failure to exhaust their administrative remedies prohibits judicial review, we find them unconvincing. This proceeding, instituted to challenge amendments which did not become effective, and

thus binding on petitioners, until April 2, 1991, was commenced exactly four months later on August 2, 1991 and hence was timely *(see, Matter of Wing v Coyne,* 129 AD2d 213, 216-217). Respondents' assertion, that petitioners are time barred to the extent that they failed to bring administrative rate appeals or initiate civil proceedings within four months of the implementation of their rate determinations for the periods between October 1990 and December 1991, fails to recognize that petitioners are dissatisfied not with the actual rates imposed, but with the methodology used to compute those rates, as embodied in the amendments to the regulations.

Nor do we find that this proceeding is barred by the doctrine of exhaustion of remedies because such appeals were not brought. It is axiomatic that administrative remedies need not be exhausted if resort to them would be futile *(see, Matter of Parkway Hosp. v Axelrod,* 178 AD2d 644, 645, *lv dismissed* 80 NY2d 921); given that the Department of Health had, in early 1991, adopted a policy of rejecting appeals founded on challenges to methodology used to calculate rates—as opposed to attacks on the way in which the methodology was applied in a particular case—based on its interpretation of the regulations allowing rate appeals *(see,* 10 NYCRR 86-2.13, 86-2.14), any such appeal would have indeed been futile.

Turning to the primary issue on appeal, the propriety of Supreme Court's directive to recalculate petitioners' reimbursement rates from October 1990 through June 1992, we find respondents' argument persuasive. Petitioners brought this proceeding to challenge the amendment to 10 NYCRR 86-2.10 (a) (3), which classified them as "under 300 bed" facilities, and Supreme Court annulled that amendment alone. Although 10 NYCRR 86-2.10 (s) was amended at the same time, and was the amendment which actually delayed the implementation of the new methodology beyond October 1, 1990, petitioners did not challenge the amendment to that subsection nor ask that it be annulled.* Their petition takes exception to respondents' adoption of a methodology which resulted in their classification as "under 300 bed" facilities, not the timetable for implementing that methodology.

* It is noteworthy that the August/December 1990 amendments, which were not challenged by petitioners, also delayed implementation of the new methodology beyond the October 1, 1990 deadline imposed by the Federal statute. The timetable established by those amendments was informally approved by Federal Health Care Financing prior to promulgation of the amendments in December 1990. The Attorney-General represents that similar approval was extended to July 1, 1992.

Petitioners argue that because 10 NYCRR 86-2.10 (s) applies to implementation of "amendments to section[ ] * * * 86-2.10 (a) (3) * * * of this Title effective April 1, 1991", annulment of that amendment leaves 10 NYCRR 86-2.10 (s) without force. They choose not to recognize, however, that 10 NYCRR 86-2.10 (s) also delays the effect of the prior amendments, those effective October 1, 1990, which would have placed them into the "300 or more bed" category initially. Petitioners were originally classified as having "under 300 beds"; in October 1990, a change in 10 NYCRR 86-2.10 (a) (3) had the effect of putting them into the "300 or more bed" class; then, in April 1991, 10 NYCRR 86-2.10 (a) (3) was again amended such that they were restored to their former category. Petitioners contested only the second amendment, not the first. 10 NYCRR 86-2.10 (s), however, operated to postpone the implementation of both amendments: the one placing petitioners in the preferable category as well as the later one displacing them. Thus, without the April 1991 amendment to 10 NYCRR 86-2.10 (a) (3), 10 NYCRR 86-2.10 (s) still has the effect of deferring implementation of the Federally mandated change until July 1992. In sum, because the question of the validity of 10 NYCRR 86-2.10 (s) was not before the court, it could not properly order petitioners' rates to be recalculated as though that subsection were invalidated, that is, using the new methodology from October 1, 1990 rather than from July 1, 1992 *(see, Monroe-Livingston Sanitary Landfill v Town of Caledonia,* 72 AD2d 957, 958, *affd* 51 NY2d 679).

Weiss, P. J., Mikoll, Levine and Crew III, JJ., concur. Ordered that the amended judgment is modified, on the law, without costs, by reversing so much thereof as remits for recomputation petitioners' Medicaid reimbursement rates effective from October 1, 1990 through June 30, 1992, and, as so modified, affirmed.

