■ In the Matter of INDEPENDENT HEALTH ASSOCIATION, INC., Appellant, v NEW YORK STATE DEPARTMENT OF SOCIAL SERVICES et al., Respondents. (Proceeding No. 1.) In the Matter of CAPITAL DISTRICT PHYSICIANS' HEALTH PLAN, Appellant, v NEW YORK STATE DEPARTMENT OF SOCIAL SERVICES et al., Respondents. (Proceeding No. 2.) [619 NYS2d 387] —Mercure, J. Appeals from two judgments of the Supreme Court (Hughes, J.), entered July 20, 1993 in Albany County, which dismissed petitioners' applications, in two proceedings pursuant to CPLR article 78, to review determinations of respondent Department of Social Services denying petitioners' requests for exemptions from or reductions of the 9% surcharge imposed pursuant to Public Health Law § 2807-c.

Petitioners are health care maintenance organizations (hereinafter HMOs) licensed pursuant to Public Health Law article 44. Petitioner Independent Health Association, Inc. (hereinafter IHA) operates, as is relevant to its appeal, in the

Counties of Allegany, Cattaraugus, Chautauqua, Erie, Genesee, Niagara, Orleans and Wyoming; petitioner Capital District Physicians' Health Plan (hereinafter CDPHP) operates in the Counties of Albany, Columbia, Greene, Rensselaer, Saratoga and Schenectady.

The Legislature enacted Social Services Law § 364-j in 1988, establishing Medicaid-managed care demonstration programs for selected social services districts (see, L 1988, ch 710, § 1). Among the authorized providers of managed care were HMOs (see, Social Services Law § 364-j [3] [a]). In 1991, the Legislature amended Social Services Law § 364-j and converted the demonstration programs into a mandatory program of State-wide applicability (see, L 1991, ch 165, § 8). Thereafter, the Legislature enacted Public Health Law § 2807-c (2-a), effective April 2, 1992 (L 1992, ch 41, §§ 95, 165), which imposed a 9% surcharge upon inpatient hospital services rates paid by HMOs for services rendered to HMO enrollees who are not Medicaid recipients (see, Public Health Law § 2807-c [2-a] [a]). The surcharge proceeds are payable to a State-wide HMO pool and credited to the State's general fund. This provision acted as an incentive to HMOs to participate as managed care providers in the Medicaid program because it allowed for an incremental reduction and eventual elimination of the surcharge upon a showing that the HMO enrolled a certain percentage of its target number of Medicaid-eligible persons (see, Public Health Law § 2807-c [2-a] [b] [i], [ii]). An HMO could also apply for an exemption from participation in a managed care program by demonstrating "a good faith effort to enter into a managed care contract with the social services district" or "other criteria" as established by respondent Department of Social Services (hereinafter DSS) (Public Health Law § 2807-c [2-a] [b] [iii]).

DSS and respondent Department of Health, by letter dated April 14, 1992, advised all HMOs of the statutory provisions and set forth certain examples of good-faith effort. During April 1992, petitioners made separate exemption requests. DSS denied the requests based on its assessment of petitioners' efforts to enter into contracts with the social services districts in their respective service areas. Following DSS' determination, the Legislature amended Public Health Law § 2807-c (2-a), effective August 7, 1992, by adding provisions which essentially codified DSS' examples of "good faith effort" (see, L 1992, ch 834, §§ 4, 5), giving all HMOs another 30-day period to file for an exemption or reduction for the 1992 rate period. Thereafter petitioners, pursuant to Public Health Law

§ 2807-c (2-a) (b) (iii) (C), requested exemptions for the 1992 and 1993 rate years. DSS denied the requests for the 1992 rate year. For the 1993 rate period, DSS granted IHA's exemption request for each county except Niagara and agreed to credit IHA with the additional enrollees requested for Erie County. DSS granted CDPHP's exemption request for Albany County based on its determination that CDPHP had demonstrated good-faith efforts as to that social services district and, eventually, also granted CDPHP an exemption as to Saratoga County, which it determined was responsible for the implementation delay.

In February 1993, petitioners commenced these CPLR article 78 proceedings to annul DSS' determinations denying exemptions from the surcharge for the 1992 and 1993 rate periods. Supreme Court denied CDPHP's petition and a judgment was entered dismissing the petition. Citing its decision in the proceeding brought by CDPHP, Supreme Court also denied IHA's petition, and a judgment was entered dismissing that petition. IHA and CDPHP each appeal.

We note at the outset that the United States District Court for the Southern District of New York and the Second Circuit Court of Appeals have declared the 9% surcharge of Public Health Law § 2807-c (2-a) (a) to be preempted by ERISA and have enjoined enforcement *(see, Travelers Ins. Co. v Cuomo,* 813 F Supp 996, *affd in part and revd in part* 14 F3d 708, *cert granted* — US —, 115 S Ct 305), thereby rendering these appeals moot. Because the United States Supreme Court has accepted the case for review, however, we shall address petitioners' arguments that there was not a rational basis for respondents' denials of their exemption requests.

Initially, we reject petitioners' arguments that DSS acted arbitrarily by considering an HMO's efforts to participate in managed care programs prior to the enactment of Public Health Law § 2807-c (2-a). The "good faith" exemption, made available first by respondents and thereafter by express legislative mandate, simply rewards efforts made during the many years before 1992 in which HMOs provided managed care to the Medicaid-eligible population. Petitioners have failed to demonstrate how DSS' inquiry, made for the purposes of determining whether an exemption from the legislatively mandated surcharge was warranted, had an impermissible retroactive effect on petitioners *(cf., Matter of Chrysler Props. v Morris,* 23 NY2d 515 [amendment permitting retroactive judicial review of previously unreviewable determinations unconstitutional]). Next, our review of the record demon-

strates that petitioners failed to meet the good-faith effort criteria established by DSS and Public Health Law § 2807-c (2-a). The plain language of DSS' third example and Public Health Law § 2807-c (2-a) (b) (iii) (C) clearly required that the agreement to delay implementation be with DSS, not the individual districts.

Nor have petitioners shown that DSS granted petitioners exemptions for the 1993 rate period based on the same set of facts as earlier exemption denials. The 1992 and 1993 exemption applications do not contain the same facts. As to IHA, the exemption application for the 1993 rate period contains a detailed description of IHA's efforts in the counties in which it was granted exemptions by DSS, including post-May 1, 1992 efforts not contained in the application for the 1992 period. Similarly, because CDPHP did not submit its implementation plans to Albany County until June 1992, DSS considered this action in granting CDPHP an exemption for Albany County for the 1993 rate period, but not the 1992 rate period. Petitioners' remaining arguments that the policy of imposing a surcharge on HMOs was arbitrary because it constituted a complete departure from prior practice and that the initial denials were arbitrary because they were based on unpublished standards were not raised in Supreme Court, are not properly before this Court (see, *Matter of Granger & Sons v State of New York Facilities Dev. Corp.*, 207 AD2d 596, 598; *Gunzburg v Gunzburg*, 152 AD2d 537, 538) and are meritless in any event.

Mikoll, J. P., Crew III, White and Yesawich Jr., JJ., concur. Ordered that the appeals are dismissed, as moot, without costs.