[643 NYS2d 231]

In the Matter of HOME CARE ASSOCIATION OF NEW YORK STATE et al., Appellants, v MARY JO BANE, as Commissioner of Social Services of the State of New York, et al., Respondents.

Third Department, November 2, 1995

**APPEARANCES OF COUNSEL**

*Gleason, Dunn, Walsh & O'Shea,* Albany *(Thomas F. Gleason* of counsel), for appellants.

*Dennis C. Vacco, Attorney-General,* Albany *(Victor Paladino* and *Peter H. Schiff* of counsel), for respondents.

### OPINION OF THE COURT

MIKOLL, J. P.

Petitioners are not-for-profit membership corporations consisting of members that provide care and services to persons

who receive medical assistance through the Medicaid program. Petitioners claim that their members have been directly and negatively impacted by respondents' application of Public Health Law § 3614 (7). Consequently, petitioners commenced the instant CPLR article 78 proceeding on October 22, 1992 challenging respondent Commissioner of Health's calculation of the reimbursement rate assigned to certain long-term home health care programs (hereinafter LTHHCPs). Petitioners assert that the interpretation and implementation of Public Health Law § 3614 (7) by the Department of Health (hereinafter the Department) violates the statutory provision by reducing providers' reimbursement more than is authorized by the statute. Petitioners further assert that respondent also violated 42 USC § 1396a (a) (30) (A), and the rules promulgated in support thereof, in failing to establish proper standards or methods for setting Medicaid LTHHCP rates in a manner consistent with efficiency, economy and quality of care.

Supreme Court ruled that the Department's interpretation of Public Health Law § 3614 (7), along with its regulations for determining Medicaid reimbursement rates for LTHHCPs, was reasonable. Supreme Court further found that Public Health Law § 3614 (7) and its administrative implementation encourages economies and did not violate 42 USC § 1396a (a) (30) (A), and dismissed the petition.

Medicaid reimbursement rates for home care services including LTHHCPs (*see*, Public Health Law § 3612 [5]; 10 NYCRR subpart 86-5) are calculated on a prospective basis by using the actual cost experience of a prior "base year". Rates normally are issued in advance of the year to which they apply. Each LTHHCP's actual costs are to be submitted annually to the Department in "cost reports". These reported costs are generally divided into operating costs and capital costs which are then reviewed to ascertain whether they are "probably chargeable to necessary patient care" or otherwise excludable (10 NYCRR 86-5.17 [a]). These "allowable costs" are then converted to a visit or hourly cost basis for each of the specific services which the LTHHCP will be providing (*see*, 10 NYCRR 86-5.2 [b]).

The Department next computes cost guidelines (i.e., efficiency ceilings) for each service to be provided, calculated on a regional basis employing the most recent cost data available from all LTHHCPs (*see*, 10 NYCRR 86-5.12 [a], [b]). When a

specific LTHHCP's "rate based on cost" (i.e., visit/hourly cost basis) exceeds the cost guideline for its region, the *promulgated* rate for that LTHHCP shall equal the cost guideline amount (*see*, 10 NYCRR 86-5.12 [d], [3]). A "trend factor" adjustment reflects inflation between the base year and the rate year (*see*, 10 NYCRR 86-5.11 [b]).

The rates of payment by governmental agencies for LTHHCPs are limited by Public Health Law § 3614 (7), which caps the ratio of administrative and general costs to operational costs at 30% (*see*, Public Health Law § 3614 [7]). The statute additionally requires a mandatory reduction in that ratio, whether or not it exceeds 30%. However, the Department first compares the hourly cost basis for each service to its applicable cost guideline, and whether the actual hourly cost basis or the cost guideline amount becomes the promulgated rate, the mandated reduction is then applied to the resultant reimbursable rate.

■ Petitioners argue that based on the language of the statute (*see*, Public Health Law § 3614 [7] [eff until Jan. 1, 1995]), the mandated reduction must be applied to the ratio *before* the efficiency ceilings are applied and a reimbursement rate is promulgated. Petitioners also claim that the Department's methodology has resulted in significant reduction in reimbursement in excess of that which was authorized by the statute. We disagree. The Department's application of Public Health Law § 3614 (7) to postceiling cost figures is proper. The judgment of Supreme Court should be affirmed.

As this case involves not only an agency's interpretation of an applicable statute and implementing regulations (*see*, *Matter of Howard v Wyman*, 28 NY2d 434, 438; *see also*, *Doctors Council v New York City Employees' Retirement Sys.*, 71 NY2d 669, 674-675) but also the Department's knowledge and understanding of underlying operational procedures and practices, a reviewing court should give great deference to the construction the Department places on the statute and implementing regulations (*see*, *Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459; *Matter of New York State Assn. of Life Underwriters v New York State Banking Dept.*, 83 NY2d 353, 360).

Application of the mandated percentage reduction to petitioners' rates after the cost guidelines/efficiency ceilings have been applied is consistent with the purpose for which the legislation was enacted. The purpose of the statute is to encourage more efficient LTHHCPs which emphasize direct care costs

(*see*, Public Health Law § 3614 [7]). Under the Department's present methodology, LTHHCPs that keep their allowable operational costs below the cost guidelines, that is, are efficiently operated, may properly retain any reimbursement which exceeds the rate (*see*, *Matter of Beekman-Downtown Hosp. v Whalen*, 44 NY2d 124, 128). Thus, the Department's interpretation and application of the statute to postceiling cost figures rather than, as petitioners urge, to allowable base year operational costs, i.e., before the cost guidelines are applied, is appropriate and rational. The latter method would result in rewarding LTHHCPs whose allowable operational costs exceed the cost guidelines, a result inconsistent with the statutory purpose.

Furthermore, in 1993 Public Health Law § 3614 (7) was amended to expressly define reimbursable base year operational costs to "mean those base year operational costs remaining *after* application of all other efficiency standards, including, but not limited to, peer group cost ceilings or guidelines" (L 1993, ch 59, § 58, as amended by L 1994, ch 170, § 472 [emphasis supplied]). This legislative mandate validates respondents' interpretation and application of Public Health Law § 3614 (7) and the Department's regulations (*see*, *Matter of Independent Health Assn. v New York State Dept. of Social Servs.*, 210 AD2d 638, 640).

Petitioners' claim that the Department's own terminology in calculating rates is inconsistent with its present interpretation of Public Health Law § 3614 (7) is rejected. The apparent ambiguities in the use of the term "allowable costs" as "reimbursable costs" by reference to some Department correspondence (in a 1992 Medicaid rate sheet) amounts to no more than a misnomer. Strictly speaking, costs cannot become reimbursable until they have been subjected to the efficiency ceilings. Such loose use of terms does not undermine respondents' rational interpretation and application of Public Health Law § 3614 (7).

Petitioners' contention that the Department's methodology for rate setting is inconsistent with Federal law, namely, that respondents have failed to establish that Public Health Law § 3614 (7) was enacted to promote efficiency, economy and quality of care (*see*, 42 USC § 1396a [a] [30] [A]), rather than to achieve fiscal savings, is not viable here. As no private right of action was created under 42 USC § 1396a (a) (30) (A) (*see*, *Kam Shing Chan v City of New York*, 1 F3d 96, 101-103, *cert denied*, 510 US 978; *compare*, *Arkansas Med. Socy. v Reynolds*, 6 F3d

519, 527, *with Fulkerson v Commissioner, Maine Dept. of Human Servs.*, 802 F Supp 529, 534-535; *see also, Wilder v Virginia Hosp. Assn.*, 496 US 498 [Boren Amendment]), petitioners may not maintain a cause of action under 42 USC § 1396a (a). Moreover, assuming that such an action is maintainable, the record indicates that the Department and respondent Commissioner of Social Services were fully aware of the requirements of 42 USC § 1396a (a) (30) (A) and that each respondent assured that the amendment limiting administrative and general costs for LTHHCPs to no more than 30% of the total reimbursable costs was consistent with efficiency, economy and quality of care. Significantly, as Supreme Court noted, insofar as the statute was itself "designed to encourage a reduction of the percentage spent on general and administrative expenses [it] speaks for itself" and there was an absence of any evidence that the statute (Public Health Law § 3614 [7]) was enacted or that the regulations were promulgated purely for budgetary reasons, or that the above factors were not considered. Thus, Supreme Court did not err in dismissing the cause of action claiming a violation of 42 USC § 1396a (a) (30) (A).

CREW III, WHITE, CASEY and YESAWICH JR., JJ., concur.

Ordered that the judgment is affirmed, without costs.