■ In the Matter of ST. MARGARET's CENTER, by the CENTER FOR THE DISABLED CORPORATION, et al., Appellants, v ANTONIA NOVELLO, as Commissioner of Health, et al., Respondents. [803 NYS2d 798]—

Spain, J. Appeals (1) from a judgment of the Supreme Court (McNamara, J.), entered July 14, 2004 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Commissioner of Health regarding Medicaid reimbursement rates, and (2) from an order of said court, entered January 14, 2005 in Albany County which, upon reargument, adhered to its prior determination.

Petitioners operate a 38-bed speciality nursing facility for severely disabled infants and children and a 20-bed nursing facility for young adults. At the same site, as a logical supplement to these residential programs, petitioners also operate a 20-registrant adult day care program, called DayLight, for individuals between the ages of 21 and 64. Licensed by the Department of Health and certified as providers of services under the Medicaid program, petitioners receive reimbursement for the care they provide to Medicaid recipients. In this proceeding, petitioners challenge the reimbursement rate established by respondents for the "unique services" provided through petitioners' DayLight program for each year from 1999 through 2002. Supreme Court initially dismissed the petition on the basis that petitioners had failed to demonstrate that the rates established by respondents were not "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities" (Public Health Law § 2807

[3]). On reargument, Supreme Court addressed the broader question of whether respondents were required to consider Public Health Law § 2807 at all in establishing the challenged rates, and ultimately adhered to its prior decision dismissing the petition, finding merit to respondents' argument that the Laws of 1994 (ch 170, § 448) exclusively dictate the manner of setting such rates. Petitioners appeal, and we now affirm.

As an initial matter, we agree with respondents that petitioners' challenges to the 1999, 2000 and 2001 reimbursement rates are time-barred. Petitioners had 120 days following receipt—each year—of respondents' initial rate computation sheets to challenge the methodology employed in the rate computation process, and four months following that 120-day period to commence a CPLR article 78 proceeding (*see* 10 NYCRR 86-2.13 [a]; *Matter of Evergreen Val. Nursing Home v DeBuono*, 277 AD2d 569, 570 [2000]). This proceeding, commenced on January 22, 2002, is thus untimely with respect to all but petitioners' challenge to the 2002 rates.

Turning to the merits of that challenge, petitioners argue that respondents erred in calculating the "maximum daily rate" which operates as a ceiling to allowable costs claimed by a facility (*see* 10 NYCRR 86-2.9). Maximum daily rates for facilities providing adult day health services are fixed at 65% of the facility's per diem rate on January 1, 1990, except for facilities such as petitioners', which did not have a 1990 skilled nursing facility rate,* the maximum daily rate will be calculated using "a 1990 weighted regional average per diem rate" (L 1994, ch 170, § 448; *see* 10 NYCRR 86-2.9 [f]). The weighted regional average per diem rate is calculated by "multiplying each residential health care facility's 1990 skilled nursing facility rate times its 1990 skilled nursing facility patient days, summing the result statewide, and dividing by the statewide total 1990 skilled nursing facility patient days" (10 NYCRR 86-2.9 [f]).

Petitioners contend that the weighted regional average should derive from the average rates of the five specialty pediatric facilities in New York, including petitioners' residential program for infants and children, rather than the average of all skilled nursing facilities, the majority of which serve geriatric patients. In support of this position, petitioners argue that the Laws of 1994 (ch 170, § 448) and its implementing regulations must be read in pari materia with Public Health Law § 2807 (3), which requires respondents, prior to approving reimbursement rates, to determine "that the proposed rate schedules for payments to

---

* The DayLight program was established in 1999.

hospitals for hospital and health-related services are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities."

"[I]n reviewing rate-setting actions, which are quasi-legislative in nature, we will intervene only ' "upon a compelling showing that the calculations from which [they] derived were unreasonable" ' " (*Matter of Ellis Ctr. for Long Term Care v DeBuono*, 261 AD2d 791, 794 [1999], *appeal dismissed* 93 NY2d 1037 [1999], quoting *Matter of Society of N.Y. Hosp. v Axelrod*, 70 NY2d 467, 473 [1987], quoting *Matter of Catholic Med. Ctr. of Brooklyn & Queens v Department of Health of State of N.Y.*, 48 NY2d 967, 968 [1979]). Even if we were to accept petitioners' argument that the statutory and regulatory authority relied upon by respondents should be construed in conjunction with Public Health Law § 2807 (3), we cannot say that respondents' rate setting methodology, in this instance, is unreasonable. Ordinarily, related statutes or regulations should be construed together, but not where the Legislature has expressed a contrary intent (*see Matter of Plato's Cave Corp. v State Liq. Auth.*, 68 NY2d 791, 793 [1986]). Section 448 of chapter 170 mandates the use of a "weighted regional average" to calculate the maximum daily rate "[n]otwithstanding any inconsistent provision of law or regulation to the contrary" (L 1992, ch 41, § 1). Further, the statutory language includes but one exception, allowing a $160 per day ceiling for those facilities which provide adult day services for persons with acquired immune deficiency syndrome and related illnesses (L 1994, ch 170, § 448, amending L 1992, ch 41, § 1). Thus, even accepting the compelling fact that a notable difference exists between the unique services and patient mix in the DayLight program and traditional geriatric oriented programs, we find no support for petitioners' argument that respondents must consider that distinction in calculating the maximum daily rate. Indeed, considering the express statutory language and affording the interpretation of that statute and its implementing regulations by respondent Commissioner of Health the considerable deference to which it is entitled, we find unpersuasive petitioners' argument that it was unreasonable for respondents to utilize rate data from all of the skilled nursing facilities across the state to compute the maximum daily rate for petitioners' DayLight program (*see Matter of Blossom View Nursing Home v Novello*, 4 NY3d 581, 594-595 [2005]; *Matter of Ellis Ctr. for Long Term Care v DeBuono, supra* at 794; *Matter of Sylcox Nursing Home & Health Related Facility v Axelrod*, 184 AD2d 986, 988 [1992], *lv denied* 80 NY2d 761 [1992]).

Finally, we conclude that petitioners lack standing to pursue

their claim under 42 USC § 1396a, which requires reimbursement for adult day care services to be "consistent with efficiency, economy, and quality of care" (42 USC § 1396a [a] [30] [A]). We have previously held that 42 USC § 1396a (a) (30) (A) creates no private right of action enforceable in the context of a CPLR article 78 proceeding for health care providers such as petitioners (*see Matter of Home Care Assn. of N.Y. State v Bane*, 218 AD2d 106, 110-111 [1995], *lv denied* 87 NY2d 808 [1996]).

Cardona, P.J., Peters, Carpinello and Kane, JJ., concur. Ordered that the judgment and order are affirmed, without costs.