In the Matter of GRAND MANOR NURSING HOME HEALTH RELATED FACILITY, INC., Doing Business as GRAND MANOR NURSING HOME AND REHABILITATION CENTER, Appellant, v ANTONIA C. NOVELLO, as Commissioner of Health, et al., Respondents. [835 NYS2d 473]—

Mercure, J.P. Appeal from a judgment of the Supreme Court (Tomlinson, J.), entered December 30, 2005 in Albany County, which granted respondents' motion to convert the action to a CPLR article 78 proceeding and to dismiss the petition.

Petitioner is a residential health care facility licensed by respondent Commissioner of Health (hereinafter respondent). It

contains 240 beds and has provided Medicaid recipients in Bronx County with service for over 20 years. Petitioner challenges its Medicaid reimbursement rate for 2004, asserting that the method used by the Department of Health (hereinafter DOH) to calculate the reimbursement rate violates the Omnibus Budget Reconciliation Act of 1987 (Pub L 100-203, 101 US Stat 1330 [hereinafter OBRA 1987]), and various applicable statutes and regulations. OBRA 1987 became effective in New York in 1992 and mandated, among other things, that DOH eliminate payment distinctions between health related facilities and skilled nursing facilities (hereinafter HRFs and SNFs, respectively) (*see Matter of Amsterdam Nursing Home Corp. v Commissioner of N.Y. State Dept. of Health*, 192 AD2d 945, 945 [1993], *lv denied* 82 NY2d 654 [1993]). HRFs provided less intensive care than SNFs and were not required to employ registered nurses or the same number of employees as SNFs.

During the time period at issue, the operating cost component of a facility's Medicaid reimbursement rate was computed, in part, based upon the facility's 1983 cost experience, adjusted by "trend factors" for each year to account for inflation.* DOH uses a "roll factor," which is the cumulative effect of the yearly trend factors, to inflate costs from the base period to the rate period (*see* 10 NYCRR 86-2.10 [a] [8]). Since OBRA 1987 became effective, DOH has computed trend factors for all nursing homes without regard to their former status as HRFs or SNFs. Inasmuch as the roll factor is the cumulative result of all the individual trend factors from 1984 to present, however, it includes pre-1992 trend factors that did distinguish between HRFs and SNFs and provided for lower percentage changes from the 1983 base costs for HRFs.

Prior to implementation of OBRA 1987, petitioner was operated as a HRF and, therefore, had lower trend factors than a SNF. These older trend factors continue to impact petitioner's more recent roll factors. Specifically, the roll factor used in calculating petitioner's 2004 rate at issue here was 93.10%; if petitioner had been a SNF before 1992, its 2004 roll factor would have been 97.12%. It is DOH's incorporation of the pre-1992 HRF trend factors in computing the 2004 roll factor that petitioner challenges as continuing the distinction between HRFs and SNFs without a rational basis and contrary to state and federal law.

Petitioner commenced this action in Supreme Court after

---

* Public Health Law § 2808 (2-b) provides that the base year for operating costs is to be updated beginning January 1, 2007 (*see Matter of Nazareth Home of the Franciscan Sisters v Novello*, 7 NY3d 538, 543-544 [2006]).

DOH rejected its administrative appeal on the ground that rate appeals are not the proper forum to challenge the rate-setting methodology itself. Following joinder of issue, Supreme Court granted respondents' motion to convert the action to a CPLR article 78 proceeding and to dismiss the petition. Petitioner appeals and we now affirm.

Initially, we conclude that Supreme Court properly converted this action into a CPLR article 78 proceeding; such a proceeding is the appropriate vehicle in which to review petitioner's claims that DOH's determination setting its reimbursement rate should be annulled on the ground that it is contrary to state and federal law and without a rational basis (*see* CPLR 103 [c]; *Planck v New York State Off. of Temporary & Disability Assistance*, 30 AD3d 725, 727 [2006], *lv dismissed* 7 NY3d 826 [2006], *cert denied* 549 US —, 127 S Ct 1040 [2007]; *see also New York City Health & Hosps. Corp. v McBarnette*, 84 NY2d 194, 204 [1994]). Turning to the merits, we note that where its rate-setting actions are challenged, "DOH is entitled to a 'high degree of judicial deference, especially when . . . act[ing] in the area of its particular expertise,' and thus petitioners bear the 'heavy burden of showing' that DOH's rate-setting methodology 'is unreasonable and unsupported by any evidence' " (*Matter of Nazareth Home of the Franciscan Sisters v Novello*, 7 NY3d 538, 544 [2006], quoting *Matter of Consolation Nursing Home v Commissioner of N.Y. State Dept. of Health*, 85 NY2d 326, 331-332 [1995]; *see New York State Assn. of Counties v Axelrod*, 78 NY2d 158, 166 [1991]). Here, petitioner argues that OBRA 1987 requires the elimination of the historical HRF payment vestiges used in calculating the roll factor and that pre-1992 SNF trend factors must be used instead. It further asserts that DOH's methodology is arbitrary and capricious because DOH continues to use the unlawful HRF/SNF distinction in calculating its roll factor despite the fact that its 1983 costs—to which the roll factor is applied—have been recalculated to eliminate the distinction, in conformance with OBRA 87 mandates (*see Matter of Amsterdam Nursing Home Corp. v Commissioner of N.Y. State Dept. of Health, supra* at 945).

We agree with respondents, however, that the elimination of the distinction between SNF and HRF trend factors in OBRA 1987 was prospective; nothing in the statute requires states to retroactively establish new trend factors for the period before the statute's passage (*see* 42 USC § 1396a [a] [13] [A]). Moreover, petitioner does not dispute that its trend factors prior to 1992 accurately reflect the inflation that was experienced by it during those years. To the extent that petitioner and other for-

mer HRFs were required to increase their staffing levels in response to OBRA 1987, they received rate adjustments to defray their increased costs (*see Matter of Sylcox v DeBuono*, 267 AD2d 850, 852 [1999], *lv denied* 94 NY2d 765 [2000]), and petitioner does not dispute that the trend factors used thereafter adequately take any required staffing changes into account. Finally, contrary to petitioner's arguments, none of the state statutes and regulations cited requires that a universal set of trend factors be retroactively applied for the period of 1984 to 1992 (*see* Public Health Law § 2807-c [10]; L 2003, ch 62, part Z2; L 1999, ch 1, § 21; L 1996, ch 474, § 194; 10 NYCRR 86-2.12 [f]).

In sum, there is simply no factual or statutory basis for the result that petitioner urges, i.e., that DOH should recalculate all of petitioner's pre-1992 trend factors as if its former HRF beds were retroactively transformed into SNF beds by OBRA 1987 (*see Matter of Sylcox v DeBuono, supra* at 851). Rather, given that the prior trend factors represent the actual operation and inflation experience from 1984 through 1992, it was not irrational for DOH to implement OBRA 1987 by setting new trend factors prospectively (*see generally Matter of Nazareth Home of the Franciscan Sisters v Novello, supra* at 544-545).

Petitioner's remaining arguments, to the extent not addressed herein, have been considered and found to be lacking in merit.

Spain, Carpinello, Lahtinen and Kane, JJ., concur. Ordered that the judgment is affirmed, without costs.