WORTHINGTON NURSING HOME, INC. ET AL., APPELLEES, *v.* CREASY, DIR. OF PUBLIC WELFARE, ET AL., APPELLANTS.

(No. 81AP-533—Decided May 13, 1982.)

Messrs. Lucas, Prendergast, Albright, Gibson, Newman & Gee, Mr. Rankin M. Gibson and Mr. W. Joseph Strapp, for appellees.

Mr. William J. Brown, attorney general, and Mr. Richard W. Ross, for appellants.

MOYER, J. This matter is before us on the appeal of defendants-appellants, the Director of the Ohio Department of Public Welfare (department) and other officials of the state of Ohio, from a declaratory judgment of the Court of Common Pleas of Franklin County declaring that the scheme used by the department to reimburse nursing home owners for the salaries paid nursing home administrators from January 1973 to September 30, 1976 was unlawful, and enjoining state officials to reimburse nursing home providers without regard to the ceilings formerly imposed by the department on such reimbursements.

Plaintiffs-appellees (plaintiffs) are nursing home owners and administrators who are reimbursed for the salaries paid administrators through the department under the federal Medicaid program. Plaintiffs initiated a class action against the director of the department and other officials of the state seeking a declaration that the department acted unlawfully by limiting Medicaid reimbursement for administrators' compensation, requesting an injunction compelling payment of reimbursement for administrators' salaries which was limited by the ceilings, and seeking attorneys' fees and costs.

The trial court declared the ceilings imposed by the department to be unreasonable, arbitrary, capricious, and discriminatory. The trial court enjoined the department from applying the ceilings to the extent that the ceilings were lower than the absolute limits set by statute. The court further mandatorily enjoined defendants to pay plaintiffs the amount of compensation claimed for nursing home administrators, so long as the reimbursements did not exceed the per diem ceilings established by the General Assembly. The per diem ceiling is the maximum amount reimbursed to nursing homes for their reasonable daily per patient costs. However, the trial court did not include in its judgment the specific amounts owed to any of the nursing homes within the class. Defendants raise the following three assignments of error in support of their appeal:

"I. The trial court erred in finding that the method ODPW uses to determine reasonable costs for an administrator is arbitrary, capricious and unlawful.

"II. The trial court did not have subject matter jurisdiction to award retroactive relief against appellants.

"III. The trial court erred in ordering the payment of actual costs for administrator's salary."

We will first dispose of plaintiffs' motion to dismiss the appeal in which they argue the trial court's judgment is not a final appealable order.

Plaintiffs argue that the trial court's judgment is not a final disposition of the case because it orders payment of unliquidated sums. They compare this case to the second decision of the Supreme Court in the case of State, ex rel. Montrie Nursing Home, v. Aggrey (1980), 63 Ohio St. 2d 121 [17 O.O.3d 74]. In that case, the Supreme Court held that the writ of mandamus granted nursing home operators by this court was invalid because it ordered the payment of unliquidated sums to the nursing homes in the class. The clear distinction between Montrie, supra, and this case is that this case seeks declaratory and injunctive relief rather than a writ of mandamus. As the Supreme Court stated in Montrie, a writ of mandamus will issue only where there is a clear legal right to a specific sum of money. Such specificity is not required for the granting of declaratory or injunctive relief.

The first seven paragraphs of the judgment entry of the trial court are

clearly final, but some question is raised as to the finality of the eighth paragraph. The trial court therein set out guidelines for reimbursement to the nursing homes in the class, including reimbursement for amounts purportedly underpaid for administrative costs in previous periods. The court directed that the department should pay to the nursing facilities the entire amount requested so long as said amounts do not exceed the per diem ceilings established by the General Assembly for the periods in question. The trial court did not determine the specific amounts owed to the numerous facilities in the class. Neither, apparently, did the trial court intend that such amounts would be computed within the judicial process, but rather that the department should make those computations based upon the requests of the providers and the guidelines established by the trial court.

The judgment entry does not state there is "no just reason for delay," as required by Civ. R. 54(B), if only a partial judgment is being rendered by the trial court. However, insofar as the relief granted by the trial court was valid, the trial court did not contemplate any further proceedings in the case. The trial court clearly manifested an intent to terminate the case.

Insofar as the order of the trial court declares the scheme of reimbursement heretofore applied to be unlawful and compels future reimbursement in accordance with statute, the order is complete. As our disposition of this case on the merits will indicate, we need not consider the finality of the order as it relates to reimbursement for previous periods of nursing care provided. The motion to dismiss is overruled.

Between 1973 and December 1, 1975, the department assigned per diem rates to nursing homes and made interim payments to the homes which were later augmented by final settlements. In establishing the interim rates, the department used two different administrator-salary ceilings. The ceilings for administrators who had no ownership interest in the nursing home by which they were employed were higher than the ceilings for administrators who had an ownership interest in the nursing home by which they were employed. When the final settlements were made to the nursing homes, the department applied only the higher ceiling. At the time of the hearing, only ninety-two of a potential nine hundred settlements had been made with nursing homes that participated in the Medicaid program.

Beginning in December 1975, the department adopted what is referred to as the A-2 schedule, which provides that nursing homes may be paid a reasonable allowance of compensation for the services of the nursing home owners if the owners' services are necessary and reasonable. "Reasonable" is defined as fair-market value of the services and is to be determined by identifying the compensation paid to persons performing the same functions in comparable institutions who are not owners of the institutions.

Defendants argue in support of their first assignment of error that the trial court erred in finding that the method used by the department to determine reasonable costs for nursing home administrators is arbitrary, capricious and unlawful. In its decision the trial court concluded that the A-2 schedule used by defendants since December 1975 was unreasonable for the following reasons:

"a) The A-2 schedule salary ranges are based on surveys which did not follow acceptable or accurate statistical or actuarial methods and therefore do not furnish an accurate basis for evaluating the reasonableness of compensation to administrators and assistant administrators.

"b) The A-2 schedule salary ranges, which are based on data from 1974 surveys, remained frozen until January, 1979, and then were increased by only 7%.

"c) The A-2 schedule salary ranges, from the inception of the A-2 schedule in December, 1975, have been unreasonably low.

"d) The 40-hour week rule is arbitrary, unreasonable and discriminatory.

"e) The points for geographic location are arbitrary, unreasonable and discriminatory.

"f) The failure to recognize work experience gained outside of Ohio is arbitrary, unreasonable and discriminatory."

With respect to the conclusions designated as (d) and (e), there is virtually no evidence to support the use of these two factors in determining reimbursement. Even defendants' witness found fault with the use of these two factors. We conclude that the trial court's findings designated (d) and (e) are supported by the evidence.

In determining whether the trial court's conclusion (f) is arbitrary, unreasonable and discriminatory, we look to another state statute to draw an analogy. In R.C. 3317.13 the General Assembly has mandated that public school districts give teachers credit for prior teaching experience in the same school, in other public schools in Ohio, and in chartered non-public schools in Ohio in determining minimum salary levels. The statute is silent regarding experience earned outside Ohio, thus permitting individual school districts the option to give or not give credit for out-of-state experience. If it is reasonable for the General Assembly to permit a school district to not consider out-of-state experience in establishing minimum salaries of its teachers, it is reasonable for the department to fail to recognize work experience gained outside Ohio in determining the level of reimbursement to nursing home administrators who have an ownership interest in the nursing home. The trial court's holding that the department is required to recognize work experience outside Ohio is in error.

The trial court's conclusion (b) that the A-2 schedule salary ranges remained frozen from 1974 until January 1979, when they were increased by seven percent, is accurate. However, it is incomplete. The chief auditor for the department testified that an inflation factor was applied to the cost of administrative salaries each year from 1976 to 1979. This testimony was undisputed. Plaintiffs argue that, even if this inflation factor was applied to the costs of administrative salaries in determining reimbursement, they were nevertheless prejudiced because the ranges themselves were not adjusted. Although it may be true that an adjustment of the final amount rather than of the basic rates would in some cases have made a difference in the final amount reimbursed, we are not convinced that this difference is so great as to cause the department's method of reimbursement to be unreasonable. The department has discretion to apply an inflation factor to the final amount rather than recalculating the entire range each year. The evidence does not support the trial court's conclusion that no adjustment was made to reimbursement.

We consider now the most significant issues presented by this appeal. The evidence supports the trial court's finding that the A-2 schedule reimbursement ranges are arbitrary and unreasonable because they are not based upon surveys which followed acceptable or accurate statistical or actuarial methods. The department used as the basis of its determination of reasonable compensation the schedule A-2 salary ranges devised by the Bureau of Health Insurance (BHI), which is an agency of the United States Department of Health, Education and Welfare (now the Department of Health and Human Services). Said ranges were based on BHI's surveys of non-owner-related nursing home administrative facilities. It is undisputed that these surveys were not conducted under generally accepted standards of statistical or actuarial accuracy.

In the unreported case of *Hopewell Nursing Homes, Inc. v. Califano, Secretary of Health, Education and Welfare* (D.S.C. 1975), Civil Action No. 75-1595, the federal district court commented on several deficiencies in the BHI survey that had the effect of understating compensation actually paid to comparable non-owner administrators.

While the BHI salary schedules may be used by the department as one element in determining reimbursement ceilings, the trial court did not err by concluding that the department acted unreasonably by failing to conduct a survey in Ohio to determine that the BHI salary ranges were compatible with the range of actual salaries being paid in Ohio. We hold that the trial court did not err in concluding that the use of the BHI schedules without any independent determination of what is reasonable is an unreasonable use of said schedules.

The trial court's conclusion (c), that the A-2 schedule salary ranges were unreasonably low from their inception in December 1975, is not supported by the record. There is clear evidence that nursing homes in Ohio have not encountered difficulty in attracting qualified nursing home administrators. Were salaries unreasonably low, it could be expected that qualified personnel would not be available. There is also undisputed testimony in the record that a survey conducted by the Ohio Nursing Home Commission reveals that only fifteen percent of nursing home administrators who did not have an ownership interest in the nursing home by which they were employed received salaries which were above the ceilings imposed by the department. A significantly greater number of administrators who had an ownership interest in their nursing homes were paid salaries above the ceilings. However,

owner-related salaries are of little value in determining what salary levels the market will bear.[1] The fact that administrators with no ownership interest in the facility receive salaries under the ceilings indicates that the ceilings are not unreasonable.

We also observe that the ceilings in question apply only to the amount of reimbursement received by the nursing homes through Medicaid. Many facilities receive patients other than those for whom Medicaid is the sole source of payment. Therefore, administrators' salaries are not completely limited by the amount of Medicaid reimbursement.

Plaintiffs contend that, because the Internal Revenue Service allows nursing homes to deduct, as reasonable costs, salaries of administrators in excess of the amounts reimbursed by the department, the lower amounts reimbursed by the department were unreasonable. This argument is not persuasive. Reasonableness of employee expenditures under the Internal Revenue Code is based upon different factors from those which determine reasonable costs to be reimbursed under R.C. 5111.02.

Defendants' first assignment of error is overruled to the extent that the trial court did not err by concluding that the adoption of BHI A-2 schedule salary ranges without any independent investigation of appropriate salary levels in Ohio was unreasonable; by concluding that the forty-hour-week rule is arbitrary, unreasonable, and discriminatory; and by concluding that the system of awarding points for geographic location is arbitrary, unreasonable, and discriminatory. However, the first assignment of error is sustained to the extent that the trial court erred by finding that reimbursement for administrative salaries was not adjusted for inflation; by holding that the

---

[1] Owner administrators are not in open competition for the jobs available. The owner of a nursing home does not hire an arms-length administrator to supervise himself simply because the arms-length administrator is willing to work for a lower salary.

A-2 schedule salary ranges were unreasonably low from their inception; and by holding that the failure to recognize work experience gained outside Ohio is arbitrary, unreasonable, and discriminatory.

Because of its relationship to the matters just disposed of, we consider next defendants' third assignment of error. In support thereof, defendants argue that the trial court erred by ordering the payment of actual costs for administrators' salaries so long as the total amount reimbursed does not exceed the per diem ceilings established by the General Assembly. We agree.

Every act adopted by the General Assembly authorizing reimbursement of nursing homes under the Medicaid program has provided for reimbursement on a "reasonable cost-related basis" or for payment of "reasonable costs" up to the ceilings fixed. Such acts do not create a presumption that all costs expended not in excess of the fixed ceilings are reasonable. Rather, the department is given the responsibility for determining what is reasonable. The department would ignore this responsibility if it simply paid any amount requested for reimbursement by providers so long as the amount did not exceed the ceiling. Insofar as the scheme used by the department to determine reasonable costs was found to be improper, the trial court should have directed the department to develop an acceptable plan for reimbursement. The trial court erred by ordering defendants to pay plaintiffs the entire amounts requested up to the limits set by the General Assembly. Defendants' third assignment of error is sustained.

In support of their second assignment of error, defendants argue that the trial court did not have subject matter jurisdiction to award retroactive relief against defendants. We agree.

The gravamen of defendants' argument is that the relief granted by the trial court constituted a judgment against the state of Ohio and that the court of common pleas has no jurisdiction to hear a suit against the state unless the state has consented to be sued. Defendants cite the case of *Brownfield* v. *State* (1980), 63 Ohio St. 2d 282 [17 O.O.3d 181], for the proposition that the state of Ohio has never consented to be sued for declaratory judgment or injunctive relief in a court of common pleas. That interpretation of *Brownfield* is strained. Although the plaintiffs in *Brownfield* sought both declaratory and injunctive relief, the Supreme Court specifically held only that the state of Ohio had never consented to the maintenance of an *injunctive* action against itself in a court of common pleas.

Plaintiffs attempt to distinguish *Brownfield* on the fact that in *Brownfield* the state of Ohio was named as a defendant, whereas only state officials have been named as defendants in the instant case. It is well established that this distinction is of no consequence where the state is the real party in interest. *Farkas* v. *Fulton* (1934), 51 Ohio App. 92 [4 O.O. 527], affirmed (1936), 130 Ohio St. 390 [4 O.O. 523]. The state is the real party in interest in this case. Therefore, *Brownfield* bars plaintiffs' suit for injunctive relief. It does not, however, bar a suit for declaratory relief.

It has previously been held that a declaratory judgment action may be maintained to determine the rights of the parties with regard to a statute or an administrative rule. *Herrick* v. *Kosydar* (1975), 44 Ohio St. 2d 128 [73 O.O.2d 442]; *Burger Brewing Co.* v. *Liquor Control Comm.* (1973), 34 Ohio St. 2d 93 [63 O.O.2d 149]; *Crown Controls Corp.* v. *Nationwide Ins. Co.* (Feb. 26, 1980), Franklin App. Nos. 79AP-600 & 79AP-697, unreported. As we stated in *Crown Controls,* the Declaratory Judgment Act authorizes a declaratory judgment action against the state. Plaintiffs rely on the case of *American Life & Acc. Ins. Co. of Kentucky* v. *Jones* (1949), 152 Ohio St. 287 [40 O.O. 326] for the argument that

monetary damages may be granted incidentally to declaratory relief against the state. However, in the instant case the question of past compensation due the administrators is the heart of the controversy and may not be considered merely incidental to the other relief sought and granted.

Declaratory judgment defines the rights and duties of the parties. Such a remedy is to be distinguished from an attempt to recompense a party for a past breach of a duty by a state official. The General Assembly has authorized the courts of common pleas to determine the duties of state officials. It has also deigned to grant those same courts the jurisdiction to grant monetary relief except by the limited remedy of mandamus.

The Supreme Court clearly stated in the first *Montrie* decision (*State, ex rel. Montrie Nursing Home, Inc.,* v. *Aggrey* [1978], 54 Ohio St. 2d 394 [8 O.O.3d 401]) that mandamus is a proper remedy to compel statutory reimbursement to nursing homes. However, the standard of review to which a petition for a writ of mandamus is subjected is stricter than that applied in a declaratory judgment action. A writ of mandamus will issue only where state officials have failed to comply with a "clear legal duty." Declaratory judgment involves only an interpretation by the court of a statute or contract without the necessity that the duties imposed be clear.

Since any suit against the state is an abrogation of the common law, the jurisdiction of courts to entertain such suits must be strictly construed. Because the Supreme Court has indicated that mandamus against state officials is a proper action in a case essentially identical to the instant case, *State, ex rel. Montrie Nursing Home, Inc.,* v. *Aggrey* (54 Ohio St. 2d 394 [8 O.O.3d 401]), we are hesitant to expand the jurisdiction of the trial court to other actions which compel payment of funds from the state treasury. The trial court therefore had no jurisdiction to grant an injunction compelling reimbursement of plaintiffs for prior claimed deficiencies or to award money damages with the declaratory judgment. Defendants' second assignment of error is well taken and is sustained.

For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part and the cause is remanded for further proceedings consistent with this decision and in accordance with law.

*Judgment affirmed in part, reversed in part and cause remanded.*

REILLY and NORRIS, JJ., concur.